# Germania Savings Bank's Appeal.

1. By the Acts of April 5th 1844 and February 27th 1860, all city and county taxes in Allegheny city and county are made liens upon the real estate upon which they are assessed, and are to have priority over and to be fully paid before any other lien whatever. *Held*, affirming the court below, that the default of the collector in not making the taxes out of personal property found on the premises, during the life of his warrant, did not postpone the taxes to a mortgage, and give the latter a preference.

2. The legislature intended by the above acts that the property should at all events be liable for the taxes assessed against it, without any regard to the personalty; the taxes are from the first a lien upon the realty, and are to be preferred to all other liens.

October 16th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., absent.

Appeal from the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1879, No. 67.

Appeal of the Germania Savings Bank of Pittsburgh from the decree of the court, directing the payment of certain city and county taxes out of the proceeds of the sheriff's sale of the real estate of William W. Ackley.

On July 20th 1875, William W. Ackley executed and delivered to the appellant bank a mortgage on certain real estate in Allegheny city, conditioned for the payment of $6000.   This mortgage was duly acknowledged and recorded July 22d 1875, and was the first lien on the property described.  Default being made, a writ of scire facias was issued and prosecuted to judgment, upon which a writ of levari facias was issued and the property sold for $600. The sheriff having made a special return, awarding the fund, less costs, to the appellant, exceptions were filed on behalf of the city and county of Allegheny, claiming payment therefrom of taxes for years 1876 and 1877, amounting to $249.60.   The testimony before the auditor appointed to pass upon the exceptions and report a schedule, showed that the taxes claimed were assessed on the property after the execution and recording of appellant's mortgage; that warrants for their collection were issued to Robert P. Dilworth, the warrants for the year 1876 coming into his hands in December 1876, and for 1877, in December 1877; that from the time of the delivery of the warrants to him until some time after the sale of the real estate, there was personal property thereon, belonging to said Ackley, more than sufficient to satisfy the taxes; that demand was made upon said Robert Dilworth to levy upon said personal property, as directed by his warrants, and that he refused to do so, and that Ackley, hearing of the demand, removed his goods, but not until after a levy could have been made; and the auditor found that there was "some good-natured collusion" between the parties.

The auditor overruled the exceptions, and recommended the

payment of the proceeds to the bank. Exceptions were filed to the report of the auditor, and in passing upon the same, the court, White, J., in an opinion, inter alia, said:

"The taxes were not liens on the personal property, but were liens upon the real estate. They were taxes assessed upon the real estate, and the real estate was the ultimate, permanent and substantial security for their payment. When it is sold at sheriff's sale the lien is extinguished, and the law makes the proceeds of the sale applicable to the payment of taxes before any other lien. This is based on sound principles of public policy, that the taxes assessed upon real estate to carry on the machinery of government shall be paid in preference to all other claims. It is true, that on tax warrants and executions on ordinary judgments, the law directs that personal property shall first be taken and sold, and not until that is exhausted can recourse be had to the real estate. In that sense it is the primary fund for payment. It is primary, however, only in the sense that it is first to be levied upon. It is simply a direction to the officer how he shall proceed, and is a prudent regulation for obviously good reasons. The primary fund, in the sense of the most substantial and important, is the real estate.

"The tax collector and the judgment-creditor have two funds liable for the payment of their claims, the personalty and the realty. If they proceed to collect by execution, they must first take the personalty. But they have the election, to proceed in that way, or wait till some other creditor sells, and claim a share of the proceeds according to their priorities: Dean et al. *v.* Patton, 13 S. & R. 346. If the tax collector or judgment-creditor proceeds to execution by making a levy on personal property, he is bound by his election, and must go on with his execution and sell the personalty before he can resort to the real estate or come in on the proceeds of the sheriff's sale. The tax warrant in the hands of the collector is not an execution or lien upon the personal property. It is simply an authority to collect the amount of the tax, and in default of payment, to make a levy and sale of personal property.

"Was it the duty of the constable, after notice from the plaintiff to proceed on his warrants, to make a levy on the personal property of the defendant? If he had no lien on the personal property, and had his election to proceed by execution or wait and come in on the proceeds of the real estate, the plaintiff had no legal right to compel him to proceed against the personal property. The fact that it would have been of advantage to the plaintiff, is not of itself sufficient. The equity powers of a court are not so extensive as to reach every case of that kind. If a tax collector can be compelled, at the instance of a mortgage-creditor, to levy upon and sell personal property on the premises, so as to increase the security or proceeds of his mortgage, so could a prior judg-

ment-creditor. But that has never been thought of. Such a principle would lead to great oppressions upon unfortunate debtors, vexatious controversies among creditors, and unprofitable litigations over the proceeds of sheriff's sales. * * * The exceptions to the report of the auditor are sustained, and the taxes are directed to be paid out of the proceeds of the sale."

From this decree this appeal was taken.

*Geo. W. Guthrie*, for appellant.—Appellant contends: 1. That the primary fund for the payment of the taxes was the personal property of the person assessed, and until that is exhausted, the real estate cannot be taken. 2. That the personal property being the primary fund, and it being lost by collusion between the collector and the defendant, the taxes must be postponed.

General taxes, unlike local assessments, are debts of the person upon whom they are levied, and this whether the basis of taxation be occupation, personal property or realty. In addition to this personal liability, some tax laws give a lien on the real estate as a protection to the government, but this does not change the character of the tax, and indeed, nearly all such laws absolutely require the exhaustion of the personalty before the resort can be had to real estate.

Such is the character of the legislation under which the taxes in dispute were assessed. The 1st section of the Act of February 3d 1824, was extended to Allegheny county by the Act of April 5th 1844. In addition, two acts have been passed relating exclusively to Allegheny City, one approved February 27th 1860, Pamph. L. 85; the other approved April 14th 1863, Pamph. L. 434. It is admitted that, by this legislation, taxes assessed on real estate are made a lien thereon, and priority over all other liens is given to them, so far as the legislature can give it, but this privilege is coupled with a condition that the real estate shall not be taken until the personal property shall have been exhausted, and the tax collector shall have made return under oath that the taxes cannot be collected for want of goods and chattels upon which to levy.

In Russell *v.* Schenley, 2 Pittsburgh Rep. 356, the late Judge WILLIAMS, then A. J. of the District Court of this county, held, that where, by the terms of a lease, the tenant was bound to pay the taxes, and the tax collector refused to levy on his goods, he could not recover from the landlord. The cases are very similar in character: in the one decided, the tenant was bound to pay the tax, while in this one the mortgagor was so bound, and in both the tax collector refused to proceed against the property primarily liable. See, also, Parker's Appeal, 8 W. & S. 449.

*W. B. Rodgers*, City Solicitor, *contra.*—The collector of taxes

is a public officer, whose duty it is to collect the taxes. His negligence or "good-natured collusion," if he is guilty of any, cannot be visited upon the municipality, so as to prevent it from asserting its rights. In this case the appellant concedes that the collector's warrant was good for two years. Then no negligence could be imputed even to him for not having made the taxes before the sheriff's sale. The question then is, whether after a sheriff's sale of the real estate for a sum more than enough to pay the taxes, a lien-creditor can exclude the tax claim from distribution and require the collector to seek personal property of the defendant. It is submitted that the rule is that a sheriff's sale divests the lien of the taxes, and turns the municipality over to the fund for payment. Such has been the uniform practice in this county: Allegheny City's Appeal, 5 Watts 60. And in Philadelphia: 1 Tr. & H. Pract. 1043.

The rule is stated in Eaton's Appeal, 2 Norris 154, as follows: "It is very important that bidders at public judicial sales should have a plain simple rule to go by. They are bound to ascertain the amount of the public charges, and they can then understand that the taxes will be paid from the purchase-money certainly, and they will hold clear, and discharged of the lien, unless in the rare case, where the amount of the fund raised by the sale is not sufficient to discharge them in full." The same rule is stated in Duffy v. Philadelphia, 6 Wright 197; Smith v. Simpson, 10 P. F. Smith 169; Vanarsdalen's Appeal, 3 W. N. C. 463–471; Harrisburg v. Orth (C. P. Dauphin Co.), 6 Id. 121.

Mr. Justice GORDON delivered the opinion of the court, October 27th 1879.

By the Act of February 27th 1860, all taxes assessed by the city of Allegheny, were made liens upon the real estate upon which they were assessed, and were to have priority over and to be fully paid before any other lien whatever. In like manner, the county taxes were made a lien by the Act of April 5th 1844, extending the act for the city and county of Philadelphia, approved February 3d 1824, to the county of Allegheny. Thus, there is no controversy but that the city and county taxes, embraced in the present contention, were liens upon the Ackley property, and that they had precedence to the mortgage of the appellant. What then is there to postpone them and give the mortgage the preference? It is said, the fault of the collector in not making the taxes out of personal property found on the premises during the life of his warrant. But the default of the collector neither paid the taxes nor discharged the property on which they were assessed. These taxes were charged upon the realty, they might have been made from the personalty of the tenant in possession of the premises, but they were not so made, and hence the realty continued bound. Sup-

pose a judgment to have had precedence of the appellant's mortgage, could it be effectively urged, that an execution had been issued thereon, and that the sheriff had neglected to levy on the personal property of the defendant? What court would listen to a proposition so absurd? Why, then, should a proposition exactly similar, be entertained in the case in hand? It cannot be; and the more so, that there is little doubt but that the legislature had in view, in the passage of the acts above mentioned, among other things, the protection of the city and county from just such defaults of collectors as we find in this case. It was certainly intended that the property should, at all events, be liable for the taxes assessed against it. An attempt has been made to assimilate this case to one falling within the purview of the Act of 1844. But this is a failure, as that act not only does not primarily charge the taxes upon the lands assessed, but in express terms provides that they shall not be so charged if personal property be found upon them sufficient to pay such taxes. The acts under consideration are the very converse of this; for, without any regard whatever to personal property, the taxes are, from the first, a lien upon the realty, and upon distribution, on sale of that realty, they are to be preferred to all other liens.

Decree affirmed.